## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AXCESS GLOBAL SCIENCES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| TRIPLEPULSE, INC. d/b/a TRUBRAIN, | ) | |
| | ) | |
| Defendant. | ) | |

### COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Axcess Global Sciences LLC ("AGS" or "Plaintiff") for its complaint against Defendant TriplePulse, Inc. *dba* TruBrain ("TruBrain" or "Defendant") alleges as follows:

### THE PARTIES

1.       Plaintiff AGS is a Utah limited liability company with a principal place of business at 7810 S Prospector Dr., Salt Lake City, UT 84106.

2.       On information and belief, Defendant TriplePulse, Inc. *dba* TruBrain is a Delaware corporation with a registered agent at 8 The Green, STE A, Dover, DE 19901.

### JURISDICTION AND VENUE

3.       This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. §§ 100, *et seq*.

4.       This Court has personal jurisdiction over Defendant, and venue is proper in this District pursuant to 28 U.S.C. § 1400(b) and 28 U.S.C § 1391 because, on information and belief, Defendant resides in Delaware, has a registered agent in Delaware, and has committed a substantial portion of the infringements giving rise to this action from Delaware.

## BACKGROUND

5.    This is an action for patent infringement arising under 35 U.S.C. § 1, *et seq*. and federal false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

6.    Plaintiff AGS is a leader and innovator in the field of exogenous ketones and ketogenic precursor supplement products.  In particular, AGS has developed a line of products containing novel formulations of the health supplement Beta-Hydroxybutyrate ("BHB").  These products assist the body in producing and sustaining elevated levels of ketone bodies in the blood and aid in the body's transition into nutritional ketosis.

7.    Plaintiff has patent rights in many unique formulations of BHB, including U.S. Pat. No. 10,292,952 (the "'952 Patent"), U.S. Pat. No. 10,588,876 (the "'876 Patent"), U.S. Pat. No. 10,596,131 (the "'131 Patent"), U.S. Pat. No. 10,736,861 (the "'861 Patent"), 11,020,362 (the "'362 Patent"), U.S. Pat. No. 11,241,403 (the "'403 Patent"), (collectively the "Asserted Patents"). *See* Exhs. A, B, C, D, E, F.

8.    On information and belief, without authorization Defendant has made, used, offered for sale, and sold through their own website (https://www.trubrain.com), Amazon.com, eBay.com, Walmart.com, and other third-party retailers a product with a formula that blatantly infringes Plaintiff's exclusive rights in the Asserted Patents (the "Accused Product"):



https://www.amazon.com/dp/B07L9FQMVM, *see* Exh. G

9.    Also on information and belief, Defendant misrepresents the nature, characteristics, and qualities of the Accused Product by failing to list ingredients that reflect the actual composition of the product as determined through independent testing.

10.    Testing of the Accused Product resulted in the following Certificate of Analysis, which is attached to the Complaint.  *See* Exh. H.

## Certificate of Analysis

Product: TruBrain Ketones                                      Certificate No.: P7140434 Version 1
Lot No: FP-325840-2126                                        Issued for: Axcess Global Sciences, LLC

| Test / Date / Method | Specification | Results |
| --- | --- | --- |
| **Chiral Testing** 2023-01-17 HPLC | Amount of D-BHB    Report | 6038.27 mg / serv (51.83% D-BHB) |
| **Chiral Testing** 2023-01-17 HPLC | Amount of L-BHB    Report | 5611.88 mg / serv (48.17% L-BHB) |
| **Chiral Testing** 2023-01-19 HPLC | Amount of 1,3 Butanediol    Report | 11.5mg per 16.5g serving |
| **Potassium** 2023-01-05 ICP-MS | Report | 532.64 mg per 16.5g |
| **Sodium** 2023-01-05 ICP-MS | Report | 357.47 mg per 16.5g |
| **Quantity of BHB and Salts** 2023-01-10 Chiral HPLC. | Report | 12540.26 mg / serving (1 serv = 16.5 g) |

3

11.     Additional testing of the Accused Product resulted in the following Analytical Report, which is attached to the Complaint.  *See* Exh. I.



**BioChroma** Analytical Labs, LLC
1309 Record Crossing Rd
Dallas, TX 75235

**Analytical Report**

Report Date: 09/10/2024

Work Order: CHSG240813-004
Received Date: 08/13/2024
P.O. #:

Client: Axcess Global Sciences LLC
8688 Ruffian Lane, Suite C
Newburgh, IN 47630
Client Contact: Gary Millet

Comments:

Sample Num: 24CH09610
Client Sample Num: Trubrain080924 TruBrain
Comments: serving size: 16.5g

Lot Number: N/A

| Analysis | Method Reference | Result | Unit | Analysis Date | Approval Date |
|---|---|---|---|---|---|
| 3-Hydroxybutyric Acid Potassium salt | Customer Supplied HPLC Method | 1150 | mg/svg | 09/10/2024 | 09/10/2024 |
| Beta-Hydroxybutyrate (BHB) | BCAL-DV-AMP052 HPLC | 13200 | mg/svg | 08/27/2024 | 09/10/2024 |
| Calcium | BCAL-DV-AMP051 | 1110 | mg/svg | 08/15/2024 | 08/20/2024 |
| Calcium 3-Hydroxybutyrate salt | BCAL-DV-AMP051 and BCAL-DV-AMP052 | 6830 | mg/svg | 09/10/2024 | 09/10/2024 |
| Magnesium | BCAL-DV-AMP051 | 490 | mg/svg | 08/15/2024 | 08/20/2024 |
| Magnesium 3-Hydroxybutyrate salt | BCAL-DV-AMP051 and BCAL-DV-AMP052 | 4650 | mg/svg | 09/10/2024 | 09/10/2024 |
| Potassium | BCAL-DV-AMP051 | 315 | mg/svg | 08/15/2024 | 08/20/2024 |
| Sodium | BCAL-DV-AMP051 | 384 | mg/svg | 08/15/2024 | 08/20/2024 |
| Sodium 3-Hydroxybutyrate salt | BCAL-DV-AMP051 and BCAL-DV-AMP052 | 2100 | mg/svg | 09/10/2024 | 09/10/2024 |

12.     These independent laboratory tests confirm that the Accused Products contain substantial quantities of Calcium, even though the ingredients labels for the Accused Products do not list any Calcium.

13.     These independent laboratory tests also confirm that the Accused Products contain compositions that infringe the Asserted Patents.

14.     On information and belief, all Accused Products contain approximately the same concentrations of infringing ingredients and infringe the Asserted Patents in the same manner.

15.     Plaintiff and its BHB products are famous in the health and wellness industry, and particularly among BHB-supplement retailers.  Plaintiff's products set the standard for quality and effectiveness in the industry.  Plaintiff's products are found through online marketplaces and brick-and-mortar stores around the country, including Amazon, Walmart, Target, Walgreens, and more.

Plaintiff has sought to protect its rights in the Asserted Patents, including by engaging in enforcement actions against other retailers, including on Amazon.com, Walmart.com, eBay.com, and others.

16.     Plaintiff directly competes with Defendant in the market for BHB supplements. Plaintiff has suffered harm from Defendant's misconduct in the form of lost profits and diverted sales and market share.  Plaintiff's immediate, irreparable injuries have no adequate remedy at law and Plaintiff is entitled to injunctive relief and up to three times its actual damages, as well as costs and reasonable attorney fees.

17.     Additionally, Defendant's failure to accurately disclose all ingredients in the Accused Product labeling is likely to cause significant harm to consumers, especially those with dietary restrictions, allergies, or sensitivities.  Defendant endangers the health and safety of consumers who unknowingly consume undisclosed ingredients in the Accused Product that they may seek to avoid or are unable to tolerate.

### COUNT I – INFRINGEMENT OF U.S. PATENT NO. 10,292,952

18.     Plaintiff incorporates all of the allegations of the preceding paragraphs as if fully set forth herein.

19.     On May 21, 2019, the '952 Patent, titled "Mixed Salt Compositions for Maintaining or Restoring Electrolyte Balance While Producing Elevated and Sustained Ketosis" was duly and legally issued.  A true and correct copy of the '952 Patent is attached as Exhibit A.

20.     Plaintiff owns all rights in the '952 Patent.

21.     Plaintiff provided actual notice to Defendant of their infringement of the '952 Patent prior to the filing of this lawsuit.

22.    As a non-limiting example, set forth below is an exemplary infringement claim analysis for claim 19 of the '952 Patent in connection with the Accused Product.

23.    Representative claim 19 of the '952 Patent is reproduced below:

19. A composition for maintaining or restoring electrolyte balance while promoting or sustaining ketosis in a mammal, the composition comprising:

a beta-hydroxybutyrate mixed salt formulated from a plurality of different cations and a single anion, wherein the single anion is beta-hydroxybutyrate, and wherein other anions are omitted from the beta-hydroxybutyrate mixed salt, the cations being formulated so as to provide a biologically balanced set of cationic electrolytes upon administration to a mammal,

the beta-hydroxybutyrate mixed salt comprising at least three salts selected from the group consisting of:

10-70% by weight of sodium beta-hydroxybutyrate;

10-70% by weight of potassium beta-hydroxybutyrate;

10-70% by weight of calcium beta-hydroxybutyrate; and

10-70% by weight of magnesium beta-hydroxybutyrate,

wherein the beta-hydroxybutyrate mixed salt is in solid and/or powder form.

24.    As advertised in Defendant's product labels and listings and shown from independent testing, the Accused Product infringes at least representative claim 19 of the '952 Patent in the manner described below.

25.    To the extent the preamble of claim 19 is limiting, Accused Product meets the preamble of claim 19 as set forth below:

**19. A composition for maintaining or restoring electrolyte balance while promoting or sustaining ketosis in a mammal, the composition comprising:**

a beta-hydroxybutyrate mixed salt formulated from a plurality of different cations and a single anion, wherein the single anion is beta-hydroxybutyrate, and wherein other anions are omitted from the beta-hydroxybutyrate mixed salt, the cations being formulated so as to provide a biologically balanced set of cationic electrolytes upon administration to a mammal,

the beta-hydroxybutyrate mixed salt comprising at least three salts selected from the group consisting of:

10-70% by weight of sodium beta-hydroxybutyrate;

10-70% by weight of potassium beta-hydroxybutyrate;

10-70% by weight of calcium beta-hydroxybutyrate; and

10-70% by weight of magnesium beta-hydroxybutyrate,

wherein the beta-hydroxybutyrate mixed salt is in solid and/or powder form.



*See* Exh. G.

26.    The Accused Product further meets the limitations of claim 19 as set forth below:

19.    A composition for maintaining or restoring electrolyte balance while promoting or sustaining ketosis in a mammal, the composition comprising:

**a beta-hydroxybutyrate mixed salt formulated from a plurality of different cations and a single anion, wherein the single anion is beta-hydroxybutyrate, and wherein other anions are omitted from the beta-hydroxybutyrate mixed salt, the cations being formulated so as to provide a biologically balanced set of cationic electrolytes upon administration to a mammal,**

**the beta-hydroxybutyrate mixed salt comprising at least three salts selected from the group consisting of:**

**10-70% by weight of sodium beta-hydroxybutyrate;**

**10-70% by weight of potassium beta-hydroxybutyrate;**

**10-70% by weight of calcium beta-hydroxybutyrate; and**

**10-70% by weight of magnesium beta-hydroxybutyrate,**

wherein the beta-hydroxybutyrate mixed salt is in solid and/or powder form.



*See* Exh G.



*See* Exh I.

27.    The Accused Product further meets the limitations of claim 19 as set forth below:

19. A composition for maintaining or restoring electrolyte balance while promoting or sustaining ketosis in a mammal, the composition comprising:

a beta-hydroxybutyrate mixed salt formulated from a plurality of different cations and a single anion, wherein the single anion is beta-hydroxybutyrate, and wherein other anions are omitted from the beta-hydroxybutyrate mixed salt, the cations being formulated so as to provide a biologically balanced set of cationic electrolytes upon administration to a mammal,

the beta-hydroxybutyrate mixed salt comprising at least three salts selected from the group consisting of:

10-70% by weight of sodium beta-hydroxybutyrate;

10-70% by weight of potassium beta-hydroxybutyrate;

10-70% by weight of calcium beta-hydroxybutyrate; and

10-70% by weight of magnesium beta-hydroxybutyrate,

**wherein the beta-hydroxybutyrate mixed salt is in solid and/or powder form.**

9



*See* Exh G.

28.     Defendant has directly infringed claim 19 of the '952 Patent in the United States by making, using, offering for sale, selling, and/or importing the Accused Product in violation of 35 U.S.C. § 271(a).  As such, Defendant is liable for direct infringement of the '952 Patent.

29.     Additionally, Defendant has and continues to indirectly infringe the '952 Patent in this District and elsewhere in the United States in violation of 35 U.S.C. § 271(b) by actively inducing others—including its own customers—to directly infringe claim 19 of the '952 Patent.

30.     Defendant's infringement of the '952 Patent is willful, and this case is exceptional.

31.     Plaintiff has suffered harm as a result of Defendant's infringement of the '952 Patent, including in the form of lost profits and diverted sales and market share.  Plaintiff is

therefore entitled to recover damages sustained as a result of Defendant's wrongful acts in an amount that is to be proven at trial.

32.     Plaintiff is entitled to recover from Defendant all damages that Plaintiff has sustained as a result of Defendant's infringement of the '952 Patent, including, without limitation, lost profits but in no event less than a reasonable royalty.

33.     Defendant's infringement of the '952 Patent was and continues to be willful and deliberate, entitling Plaintiff to enhanced damages.

## <u>COUNT II – INFRINGEMENT OF U.S. PATENT NO. 10,588,876</u>

34.     Plaintiff incorporates all of the allegations of the preceding paragraphs as if fully set forth herein.

35.     On March 17, 2020, the '876 Patent, titled "Non-racemic beta-hydroxybutyrate compounds and compositions enriched with the R-enantiomer and methods of use" was duly and legally issued.  A true and correct copy of the '876 Patent is attached as Exhibit B.

36.     Plaintiff owns all rights in the '876 Patent.

37.     Plaintiff provided actual notice to Defendant of their infringement of the '876 Patent prior to the filing of this lawsuit.

38.     As a non-limiting example, set forth below is an exemplary infringement claim analysis for claim 1 of the '876 Patent in connection with the Accused Product.

39.     Representative claim 1 of the '876 Patent is reproduced below:

1.  A method for increasing ketone body level in a subject, comprising administering to a subject in need thereof a composition comprising:

    a non-racemic mixture of R-beta-hydroxybutyrate and S-beta-hydroxybutyrate that is enriched with the R-beta-hydroxybutyrate relative to the S-beta-hydroxybutyrate,

    wherein the non-racemic mixture contains up to 89% by enantiomeric

equivalents of the R-beta-hydroxybutyrate and at least 11% by enantiomeric
equivalents of the S-beta-hydroxybutyrate, with the proviso that the non-
racemic mixture contains no more than 88% by enantiomeric equivalents of
mono-ester of R-1,3-butanediol and R-beta-hydroxybutyrate.

40.    As advertised in Defendant's product labels and listings and shown from

independent testing, the Accused Product infringes at least representative claim 1 of the '876

Patent in the manner described below.

41.    To the extent the preamble of claim 1 is limiting, Accused Product meets the

preamble of claim 1 as set forth below:

1.    **A method for increasing ketone body level in a subject, comprising
      administering to a subject in need thereof a composition comprising:**

      a non-racemic mixture of R-beta-hydroxybutyrate and S-beta-hydroxybutyrate
         that is enriched with the R-beta-hydroxybutyrate relative to the S-beta-
         hydroxybutyrate,

      wherein the non-racemic mixture contains up to 89% by enantiomeric equivalents
         of the R-beta-hydroxybutyrate and at least 11% by enantiomeric equivalents
         of the S-beta-hydroxybutyrate, with the proviso that the non-racemic mixture
         contains no more than 88% by enantiomeric equivalents of mono-ester of R-
         1,3-butanediol and R-beta-hydroxybutyrate.



*See* Exh. G.

42.    The Accused Product further meets the limitations of claim 1 as set forth below:

1.    A method for increasing ketone body level in a subject, comprising administering
      to a subject in need thereof a composition comprising:

**a non-racemic mixture of R-beta-hydroxybutyrate and S-beta-hydroxybutyrate that is enriched with the R-beta-hydroxybutyrate relative to the S-beta-hydroxybutyrate**,

wherein the non-racemic mixture contains up to 89% by enantiomeric equivalents of the R-beta-hydroxybutyrate and at least 11% by enantiomeric equivalents of the S-beta-hydroxybutyrate, with the proviso that the non-racemic mixture contains no more than 88% by enantiomeric equivalents of mono-ester of R-1,3-butanediol and R-beta-hydroxybutyrate.

## Certificate of Analysis

Product: TruBrain Ketones
Lot No: FP-325840-2126

Certificate No.: P7140434 Version 1
Issued for: Axcess Global Sciences, LLC

| Test / Date / Method | Specification | Results |
|---|---|---|
| **Chiral Testing** 2023-01-17 HPLC | Amount of D-BHB   Report | 6038.27 mg / serv (51.83% D-BHB) |
| **Chiral Testing** 2023-01-17 HPLC | Amount of L-BHB   Report | 5611.88 mg / serv (48.17% L-BHB) |
| **Chiral Testing** 2023-01-19 HPLC | Amount of 1,3 Butanediol   Report | 11.5mg per 16.5g serving |
| **Potassium** 2023-01-05 ICP-MS | Report | 532.64 mg per 16.5g |
| **Sodium** 2023-01-05 ICP-MS | Report | 357.47 mg per 16.5g |
| **Quantity of BHB and Salts** 2023-01-10 Chiral HPLC. | Report | 12540.26 mg / serving (1 serv = 16.5 g) |

*See* Exh. H.

43.    The Accused Product further meets the limitations of claim 1 as set forth below:

1.    A method for increasing ketone body level in a subject, comprising administering to a subject in need thereof a composition comprising:

a non-racemic mixture of R-beta-hydroxybutyrate and S-beta-hydroxybutyrate that is enriched with the R-beta-hydroxybutyrate relative to the S-beta-hydroxybutyrate,

**wherein the non-racemic mixture contains up to 89% by enantiomeric equivalents of the R-beta-hydroxybutyrate** and at least 11% by

enantiomeric equivalents of the S-beta-hydroxybutyrate, with the proviso that the non-racemic mixture contains no more than 88% by enantiomeric equivalents of mono-ester of R-1,3-butanediol and R-beta-hydroxybutyrate.

## Certificate of Analysis

Product: TruBrain Ketones
Lot No: FP-325840-2126

Certificate No.: P7140434 Version 1
Issued for: Axcess Global Sciences, LLC

| Test / Date / Method | Specification | Results |
|---|---|---|
| **Chiral Testing**<br>2023-01-17<br>HPLC | Amount of D-BHB    Report | 6038.27 mg / serv (51.83% D-BHB) |
| **Chiral Testing**<br>2023-01-17<br>HPLC | Amount of L-BHB    Report | 5611.88 mg / serv (48.17% L-BHB) |
| **Chiral Testing**<br>2023-01-19<br>HPLC | Amount of 1,3 Butanediol    Report | 11.5mg per 16.5g serving |
| **Potassium**<br>2023-01-05<br>ICP-MS | Report | 532.64 mg per 16.5g |
| **Sodium**<br>2023-01-05<br>ICP-MS | Report | 357.47 mg per 16.5g |
| **Quantity of BHB and Salts**<br>2023-01-10<br>Chiral HPLC. | Report | 12540.26 mg / serving (1 serv = 16.5 g) |

*See* Exh. H.

44.    The Accused Product further meets the limitations of claim 1 as set forth below:

1.    A method for increasing ketone body level in a subject, comprising administering to a subject in need thereof a composition comprising:

a non-racemic mixture of R-beta-hydroxybutyrate and S-beta-hydroxybutyrate that is enriched with the R-beta-hydroxybutyrate relative to the S-beta-hydroxybutyrate,

wherein the non-racemic mixture contains up to 89% by enantiomeric equivalents of the R-beta-hydroxybutyrate and **at least 11% by enantiomeric equivalents of the S-beta-hydroxybutyrate**, with the proviso that the non-racemic mixture contains no more than 88% by enantiomeric equivalents of mono-ester of R-1,3-butanediol and R-beta-hydroxybutyrate.

## Certificate of Analysis

Product: TruBrain Ketones                                    Certificate No.: P7140434 Version 1
Lot No: FP-325840-2126                                       Issued for: Axcess Global Sciences, LLC

| Test / Date / Method | Specification | Results |
|---|---|---|
| **Chiral Testing**<br>2023-01-17<br>HPLC | Amount of D-BHB   Report | 6038.27 mg / serv (51.83% D-BHB) |
| **Chiral Testing**<br>2023-01-17<br>HPLC | Amount of L-BHB   Report | 5611.88 mg / serv (48.17% L-BHB) |
| **Chiral Testing**<br>2023-01-19<br>HPLC | Amount of 1,3 Butanediol   Report | 11.5mg per 16.5g serving |
| **Potassium**<br>2023-01-05<br>ICP-MS | Report | 532.64 mg per 16.5g |
| **Sodium**<br>2023-01-05<br>ICP-MS | Report | 357.47 mg per 16.5g |
| **Quantity of BHB and Salts**<br>2023-01-10<br>Chiral HPLC. | Report | 12540.26 mg / serving (1 serv = 16.5 g) |

*See* Exh. H.

45.   The Accused Product further meets the limitations of claim 1 as set forth below:

1.   A method for increasing ketone body level in a subject, comprising administering to a subject in need thereof a composition comprising:

a non-racemic mixture of R-beta-hydroxybutyrate and S-beta-hydroxybutyrate that is enriched with the R-beta-hydroxybutyrate relative to the S-beta-hydroxybutyrate,

wherein the non-racemic mixture contains up to 89% by enantiomeric equivalents of the R-beta-hydroxybutyrate and at least 11% by enantiomeric equivalents of the S-beta-hydroxybutyrate, **with the proviso that the non-racemic mixture contains no more than 88% by enantiomeric equivalents of mono-ester of R-1,3-butanediol and R-beta-hydroxybutyrate**.

## Certificate of Analysis

Product: TruBrain Ketones
Lot No: FP-325840-2126

Certificate No.: P7140434 Version 1
Issued for: Axcess Global Sciences, LLC

| Test / Date / Method | Specification | Results |
|---|---|---|
| **Chiral Testing** 2023-01-17 HPLC | Amount of D-BHB  Report | 6038.27 mg / serv (51.83% D-BHB) |
| **Chiral Testing** 2023-01-17 HPLC | Amount of L-BHB  Report | 5611.88 mg / serv (48.17% L-BHB) |
| **Chiral Testing** 2023-01-19 HPLC | Amount of 1,3 Butanediol  Report | 11.5mg per 16.5g serving |
| **Potassium** 2023-01-05 ICP-MS | Report | 532.64 mg per 16.5g |
| **Sodium** 2023-01-05 ICP-MS | Report | 357.47 mg per 16.5g |
| **Quantity of BHB and Salts** 2023-01-10 Chiral HPLC. | Report | 12540.26 mg / serving (1 serv = 16.5 g) |

*See* Exh. H.

46.     Defendant has directly infringed claim 1 of the '876 Patent in the United States by making, using, offering for sale, selling, and/or importing the Accused Product in violation of 35 U.S.C. § 271(a).  As such, Defendant is liable for direct infringement of the '876 Patent.

47.     Additionally, Defendant has and continues to indirectly infringe the '876 Patent in this District and elsewhere in the United States in violation of 35 U.S.C. § 271(b) by actively inducing others—including its own customers—to directly infringe claim 1 of the '876 Patent.

48.     Defendant's infringement of the '876 Patent is willful, and this case is exceptional.

49.     Plaintiff has suffered harm as a result of Defendant's infringement of the '876 Patent, including in the form of lost profits and diverted sales and market share.  Plaintiff is therefore entitled to recover damages sustained as a result of Defendant's wrongful acts in an amount that is to be proven at trial.

50.     Plaintiff is entitled to recover from Defendant all damages that Plaintiff has sustained as a result of Defendant's infringement of the '876 Patent, including, without limitation, lost profits but in no event less than a reasonable royalty.

51.     Defendant's infringement of the '876 Patent was and continues to be willful and deliberate, entitling Plaintiff to enhanced damages.

## COUNT III – INFRINGEMENT OF U.S. PATENT NO. 10,596,131

52.     Plaintiff incorporates all of the allegations of the preceding paragraphs as if fully set forth herein.

53.     On March 24, 2020, the '131 Patent, titled "Non-racemic beta-hydroxybutyrate compounds and compositions enriched with the R-enantiomer and methods of use" was duly and legally issued.  A true and correct copy of the '131 Patent is attached as Exhibit C.

54.     Plaintiff owns all rights in the '131 Patent.

55.     Plaintiff provided actual notice to Defendant of their infringement of the '131 Patent prior to the filing of this lawsuit.

56.     As a non-limiting example, set forth below is an exemplary infringement claim analysis for claim 1 of the '131 Patent in connection with the Accused Product.

57.     Representative claim 1 of the '131 Patent is reproduced below:

1.  A composition for administering ketone bodies to a subject, comprising:

    a non-racemic mixture of R-beta-hydroxybutyrate and S-beta-hydroxybutyrate containing more than 50% and up to 89% by enantiomeric equivalents of R-beta-hydroxybutyrate and less than 50% and at least 11% by enantiomeric equivalents of S-beta-hydroxybutyrate, with the proviso that the non-racemic mixture contains no more than 88% by enantiomeric equivalents of mono-ester of R-1,3-butanediol and R-beta-hydroxybutyrate,

    wherein the composition is provided as or in a tablet, capsule, powder, food product, food additive, flavored beverage, vitamin fortified beverage, non-alcoholic beverage, flavored beverage additive, vitamin fortified beverage

17

additive, non-alcoholic beverage additive, candy, sucker, pastille, food supplement, flavored mouth spray, or suppository.

58.    As advertised in Defendant's product labels and listings and shown from independent testing, the Accused Product infringes at least representative claim 1 of the '131 Patent in the manner described below.

59.    To the extent the preamble of claim 1 is limiting, Accused Product meets the preamble of claim 1 as set forth below:

1. **A composition for administering ketone bodies to a subject, comprising**:

  a non-racemic mixture of R-beta-hydroxybutyrate and S-beta-hydroxybutyrate containing more than 50% and up to 89% by enantiomeric equivalents of R-beta-hydroxybutyrate and less than 50% and at least 11% by enantiomeric equivalents of S-beta-hydroxybutyrate, with the proviso that the non-racemic mixture contains no more than 88% by enantiomeric equivalents of mono-ester of R-1,3-butanediol and R-beta-hydroxybutyrate,

  wherein the composition is provided as or in a tablet, capsule, powder, food product, food additive, flavored beverage, vitamin fortified beverage, non-alcoholic beverage, flavored beverage additive, vitamin fortified beverage additive, non-alcoholic beverage additive, candy, sucker, pastille, food supplement, flavored mouth spray, or suppository.



*See* Exh. G.

60.    The Accused Product further meets the limitations of claim 1 as set forth below:

1. A composition for administering ketone bodies to a subject, comprising:

**a non-racemic mixture of R-beta-hydroxybutyrate and S-beta-hydroxybutyrate containing more than 50% and up to 89% by enantiomeric equivalents of R-beta-hydroxybutyrate** and less than 50% and at least 11% by enantiomeric equivalents of S-beta-hydroxybutyrate, with the proviso that the non-racemic mixture contains no more than 88% by enantiomeric equivalents of mono-ester of R-1,3-butanediol and R-beta-hydroxybutyrate,

wherein the composition is provided as or in a tablet, capsule, powder, food product, food additive, flavored beverage, vitamin fortified beverage, non-alcoholic beverage, flavored beverage additive, vitamin fortified beverage additive, non-alcoholic beverage additive, candy, sucker, pastille, food supplement, flavored mouth spray, or suppository.

## Certificate of Analysis

Product: TruBrain Ketones                          Certificate No.: P7140434 Version 1
Lot No: FP-325840-2126                              Issued for: Axcess Global Sciences, LLC

| Test / Date / Method | Specification | Results |
|---|---|---|
| **Chiral Testing** 2023-01-17 HPLC | Amount of D-BHB   Report | 6038.27 mg / serv (51.83% D-BHB) |
| **Chiral Testing** 2023-01-17 HPLC | Amount of L-BHB   Report | 5611.88 mg / serv (48.17% L-BHB) |
| **Chiral Testing** 2023-01-19 HPLC | Amount of 1,3 Butanediol   Report | 11.5mg per 16.5g serving |
| **Potassium** 2023-01-05 ICP-MS | Report | 532.64 mg per 16.5g |
| **Sodium** 2023-01-05 ICP-MS | Report | 357.47 mg per 16.5g |
| **Quantity of BHB and Salts** 2023-01-10 Chiral HPLC. | Report | 12540.26 mg / serving (1 serv = 16.5 g) |

*See* Exh. H.

61.    The Accused Product further meets the limitations of claim 1 as set forth below:

1.    A composition for administering ketone bodies to a subject, comprising:

a non-racemic mixture of R-beta-hydroxybutyrate and S-beta-hydroxybutyrate containing more than 50% and up to 89% by enantiomeric equivalents of R-

beta-hydroxybutyrate and less than 50% **and at least 11% by enantiomeric equivalents of S-beta-hydroxybutyrate**, with the proviso that the non-racemic mixture contains no more than 88% by enantiomeric equivalents of mono-ester of R-1,3-butanediol and R-beta-hydroxybutyrate,

wherein the composition is provided as or in a tablet, capsule, powder, food product, food additive, flavored beverage, vitamin fortified beverage, non-alcoholic beverage, flavored beverage additive, vitamin fortified beverage additive, non-alcoholic beverage additive, candy, sucker, pastille, food supplement, flavored mouth spray, or suppository.

## Certificate of Analysis

| Product: TruBrain Ketones | | Certificate No.: P7140434 Version 1 |
| Lot No: FP-325840-2126 | | Issued for: Axcess Global Sciences, LLC |

| Test / Date / Method | Specification | Results |
|---|---|---|
| **Chiral Testing** 2023-01-17 HPLC | Amount of D-BHB  Report | 6038.27 mg / serv (51.83% D-BHB) |
| **Chiral Testing** 2023-01-17 HPLC | Amount of L-BHB  Report | 5611.88 mg / serv (48.17% L-BHB) |
| **Chiral Testing** 2023-01-19 HPLC | Amount of 1,3 Butanediol  Report | 11.5mg per 16.5g serving |
| **Potassium** 2023-01-05 ICP-MS | Report | 532.64 mg per 16.5g |
| **Sodium** 2023-01-05 ICP-MS | Report | 357.47 mg per 16.5g |
| **Quantity of BHB and Salts** 2023-01-10 Chiral HPLC. | Report | 12540.26 mg / serving (1 serv = 16.5 g) |

*See* Exh. H.

62.   The Accused Product further meets the limitations of claim 1 as set forth below:

1.   A composition for administering ketone bodies to a subject, comprising:

a non-racemic mixture of R-beta-hydroxybutyrate and S-beta-hydroxybutyrate containing more than 50% and up to 89% by enantiomeric equivalents of R-beta-hydroxybutyrate and less than 50% and at least 11% by enantiomeric equivalents of S-beta-hydroxybutyrate, **with the proviso that the non-racemic mixture contains no more than 88% by enantiomeric equivalents of mono-ester of R-1,3-butanediol and R-beta-hydroxybutyrate,**

wherein the composition is provided as or in a tablet, capsule, powder, food
product, food additive, flavored beverage, vitamin fortified beverage, non-
alcoholic beverage, flavored beverage additive, vitamin fortified beverage
additive, non-alcoholic beverage additive, candy, sucker, pastille, food
supplement, flavored mouth spray, or suppository.

# Certificate of Analysis

Product: TruBrain Ketones                                  Certificate No.: P7140434 Version 1
Lot No: FP-325840-2126                                     Issued for: Axcess Global Sciences, LLC

| Test / Date / Method | Specification | Results |
|---|---|---|
| Chiral Testing<br>2023-01-17<br>HPLC | Amount of D-BHB   Report | 6038.27 mg / serv (51.83% D-BHB) |
| Chiral Testing<br>2023-01-17<br>HPLC | Amount of L-BHB   Report | 5611.88 mg / serv (48.17% L-BHB) |
| Chiral Testing<br>2023-01-19<br>HPLC | Amount of 1,3 Butanediol   Report | 11.5mg per 16.5g serving |
| Potassium<br>2023-01-05<br>ICP-MS | Report | 532.64 mg per 16.5g |
| Sodium<br>2023-01-05<br>ICP-MS | Report | 357.47 mg per 16.5g |
| Quantity of BHB and Salts<br>2023-01-10<br>Chiral HPLC. | Report | 12540.26 mg / serving (1 serv = 16.5 g) |

*See* Exh. H.

63.    The Accused Product further meets the limitations of claim 1 as set forth below:

1.    A composition for administering ketone bodies to a subject, comprising:

a non-racemic mixture of R-beta-hydroxybutyrate and S-beta-hydroxybutyrate
containing more than 50% and up to 89% by enantiomeric equivalents of R-
beta-hydroxybutyrate and less than 50% and at least 11% by enantiomeric
equivalents of S-beta-hydroxybutyrate, with the proviso that the non-racemic
mixture contains no more than 88% by enantiomeric equivalents of mono-
ester of R-1,3-butanediol and R-beta-hydroxybutyrate,

**wherein the composition is provided as or in a tablet, capsule, powder, food
product, food additive, flavored beverage, vitamin fortified beverage,
non-alcoholic beverage, flavored beverage additive, vitamin fortified
beverage additive, non-alcoholic beverage additive, candy, sucker,**

**pastille, food supplement, flavored mouth spray, or suppository**.



*See* Exh G.

64.     Defendant has directly infringed claim 1 of the '131 Patent in the United States by making, using, offering for sale, selling, and/or importing the Accused Product in violation of 35 U.S.C. § 271(a).  As such, Defendant is liable for direct infringement of the '131 Patent.

65.     Additionally, Defendant has and continues to indirectly infringe the '131 Patent in this District and elsewhere in the United States in violation of 35 U.S.C. § 271(b) by actively inducing others—including its own customers—to directly infringe claim 1 of the '131 Patent.

66.     Defendant's infringement of the '131 Patent is willful, and this case is exceptional.

67.     Plaintiff has suffered harm as a result of Defendant's infringement of the '131 Patent, including in the form of lost profits and diverted sales and market share.  Plaintiff is

therefore entitled to recover damages sustained as a result of Defendant's wrongful acts in an amount that is to be proven at trial.

68.    Plaintiff is in compliance with all applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '131 Patent.

69.    Plaintiff is entitled to recover from Defendant all damages that Plaintiff has sustained as a result of Defendant's infringement of the '131 Patent, including, without limitation, lost profits but in no event less than a reasonable royalty.

70.    Defendant's infringement of the '131 Patent was and continues to be willful and deliberate, entitling Plaintiff to enhanced damages.

## COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 10,736,861

71.    Plaintiff incorporates all of the allegations of the preceding paragraphs as if fully set forth herein.

72.    On August 11, 2020, the '861 Patent, titled "Mixed Salt Compositions for Producing Elevated and Sustained Ketosis" was duly and legally issued.  A true and correct copy of the '861 Patent is attached as Exhibit D.

73.    Plaintiff owns all rights in the '861 Patent.

74.    Plaintiff provided actual notice to Defendant of their infringement of the '861 Patent prior to the filing of this lawsuit.

75.    As a non-limiting example, set forth below is an exemplary infringement claim analysis for claim 1 of the '861 Patent in connection with the Accused Product.

76.    Representative claim 1 of the '861 Patent is reproduced below:

1.  A kit for use in increasing ketone level in a subject, comprising:

    a beta-hydroxybutyrate mixed salt composition in solid or powder form comprising:

sodium beta-hydroxybutyrate;

potassium beta-hydroxybutyrate;

calcium beta-hydroxybutyrate; and

magnesium beta-hydroxybutyrate;

a container in which the beta-hydroxybutyrate mixed salt composition in solid or powder form is placed; and

a measuring device configured to hold therein a unit dose, or fraction thereof, of the composition in solid or powder form, wherein a unit dose of the composition contains about 1 g to about 50 g of beta-hydroxybutyrate mixed salt.

77.     As advertised in Defendant's product labels and listings and shown from independent testing, the Accused Product infringes at least representative claim 1 of the '861 Patent in the manner described below.

78.     To the extent the preamble of claim 1 is limiting, Accused Product meets the preamble of claim 1 of the '861 Patent as set forth below:

**1.     A kit for use in increasing ketone level in a subject, comprising:**

a beta-hydroxybutyrate mixed salt composition in solid or powder form comprising:

sodium beta-hydroxybutyrate;

potassium beta-hydroxybutyrate;

calcium beta-hydroxybutyrate; and

magnesium beta-hydroxybutyrate;

a container in which the beta-hydroxybutyrate mixed salt composition in solid or powder form is placed; and

a measuring device configured to hold therein a unit dose, or fraction thereof, of the composition in solid or powder form, wherein a unit dose of the composition contains about 1 g to about 50 g of beta-hydroxybutyrate mixed salt.



*See* Exh. G.

79.    The Accused Product further meets the limitations of claim 1 as set forth below:

1.    A kit for use in increasing ketone level in a subject, comprising:

**a beta-hydroxybutyrate mixed salt composition in solid or powder form comprising:**

**sodium beta-hydroxybutyrate;**

**potassium beta-hydroxybutyrate;**

**calcium beta-hydroxybutyrate; and**

**magnesium beta-hydroxybutyrate;**

a container in which the beta-hydroxybutyrate mixed salt composition in solid or powder form is placed; and

a measuring device configured to hold therein a unit dose, or fraction thereof, of the composition in solid or powder form, wherein a unit dose of the composition contains about 1 g to about 50 g of beta-hydroxybutyrate mixed salt.



*See* Exh I.

80. The Accused Product further meets the limitations of claim 1 as set forth below:

1. A kit for use in increasing ketone level in a subject, comprising:

a beta-hydroxybutyrate mixed salt composition in solid or powder form comprising:

sodium beta-hydroxybutyrate;

potassium beta-hydroxybutyrate;

calcium beta-hydroxybutyrate; and

magnesium beta-hydroxybutyrate;

**a container in which the beta-hydroxybutyrate mixed salt composition in solid or powder form is placed; and**

a measuring device configured to hold therein a unit dose, or fraction thereof, of the composition in solid or powder form, wherein a unit dose of the composition contains about 1 g to about 50 g of beta-hydroxybutyrate mixed salt.



*See* Exh G.

81.    The Accused Product further meets the limitations of claim 1 as set forth below:

1.    A kit for use in increasing ketone level in a subject, comprising:

a beta-hydroxybutyrate mixed salt composition in solid or powder form
    comprising:

sodium beta-hydroxybutyrate;

potassium beta-hydroxybutyrate;

calcium beta-hydroxybutyrate; and

magnesium beta-hydroxybutyrate;

a container in which the beta-hydroxybutyrate mixed salt composition in solid or
powder form is placed; and

**a measuring device configured to hold therein a unit dose, or fraction
thereof, of the composition in solid or powder form, wherein a unit dose of
the composition contains about 1 g to about 50 g of beta-hydroxybutyrate
mixed salt.**



*See* Exh G.



*See* Exh G.

82.     Defendant has directly infringed claim 1 of the '861 Patent in the United States by making, using, offering for sale, selling, and/or importing the Accused Product in violation of 35 U.S.C. § 271(a).  As such, Defendant is liable for direct infringement of the '861 Patent.

83.     Additionally, Defendant has and continues to indirectly infringe the '861 Patent in this District and elsewhere in the United States in violation of 35 U.S.C. § 271(b) by actively inducing others—including its own customers—to directly infringe claim 1 of the '861 Patent.

84.     Defendant's infringement of the '861 Patent is willful, and this case is exceptional.

85.     Plaintiff has suffered harm as a result of Defendant's infringement of the '861 Patent, including in the form of lost profits and diverted sales and market share.  Plaintiff is

therefore entitled to recover damages sustained as a result of Defendant's wrongful acts in an amount that is to be proven at trial.

86.     Plaintiff is entitled to recover from Defendant all damages that Plaintiff has sustained as a result of Defendant's infringement of the '861 Patent, including, without limitation, lost profits but in no event less than a reasonable royalty.

87.     Defendant's infringement of the '861 Patent was and continues to be willful and deliberate, entitling Plaintiff to enhanced damages.

## COUNT V – INFRINGEMENT OF U.S. PATENT NO. 11,020,362

88.     Plaintiff incorporates all of the allegations of the preceding paragraphs as if fully set forth herein.

89.     On June 1, 2021, the '362 Patent, titled "Beta-hydroxybutyrate mixed salt compositions and methods of use" was duly and legally issued.  A true and correct copy of the '362 Patent is attached as Exhibit E.

90.     Plaintiff owns all rights in the '362 Patent.

91.     Plaintiff provided actual notice to Defendant of their infringement of the '362 Patent prior to the filing of this lawsuit.

92.     As a non-limiting example, set forth below is an exemplary infringement claim analysis for claim 1 of the '362 Patent in connection with the Accused Product.

93.     Representative claim 1 of the '362 Patent is reproduced below:

1.     A composition for increasing blood ketone level in a subject, comprising:

at least three beta-hydroxybutyrate salts selected from:

sodium beta-hydroxybutyrate;

potassium beta-hydroxybutyrate;

calcium beta-hydroxybutyrate; and

magnesium beta-hydroxybutyrate;

wherein the composition is in solid and/or powder form,

wherein the composition is free of medium chain fatty acids having 6
to 12 carbons and glycerides or other esters thereof.

94.     As advertised in Defendant's product labels and listings, the Accused Product infringes at least representative claim 1 of the '362 Patent in the manner described below.

95.     To the extent the preamble of claim 1 is limiting, the Accused Product meets the preamble of claim 1 as set forth below:

1.  **A composition for increasing blood ketone level in a subject, comprising**:

at least three beta-hydroxybutyrate salts selected from:

sodium beta-hydroxybutyrate;

potassium beta-hydroxybutyrate;

calcium beta-hydroxybutyrate; and

magnesium beta-hydroxybutyrate;

wherein the composition is in solid and/or powder form,

wherein the composition is free of medium chain fatty acids having 6
to 12 carbons and glycerides or other esters thereof.



*See* Exh. G.

96.    The Accused Product further meets the limitations of claim 1 as set forth below:

1.    A composition for increasing blood ketone level in a subject, comprising:

**at least three beta-hydroxybutyrate salts** selected from:

**sodium beta-hydroxybutyrate**;

**potassium beta-hydroxybutyrate**;

calcium beta-hydroxybutyrate; and

**magnesium beta-hydroxybutyrate**;

wherein the composition is in solid and/or powder form,

wherein the composition is free of medium chain fatty acids having 6 to 12 carbons and glycerides or other esters thereof.



*See* Exh G.



*See* Exh I.

97. The Accused Product further meets the limitations of claim 1 as set forth below:

1. A composition for increasing blood ketone level in a subject, comprising:

at least three beta-hydroxybutyrate salts selected from:

sodium beta-hydroxybutyrate;

potassium beta-hydroxybutyrate;

calcium beta-hydroxybutyrate; and

magnesium beta-hydroxybutyrate;

**wherein the composition is in solid and/or powder form**,

wherein the composition is free of medium chain fatty acids having 6 to 12 carbons and glycerides or other esters thereof.



*See* Exh G.

98.    The Accused Product further meets the limitations of claim 1 as set forth below:

1.    A composition for increasing blood ketone level in a subject, comprising:

at least three beta-hydroxybutyrate salts selected from:

sodium beta-hydroxybutyrate;

potassium beta-hydroxybutyrate;

calcium beta-hydroxybutyrate; and

magnesium beta-hydroxybutyrate;

wherein the composition is in solid and/or powder form,

**wherein the composition is free of medium chain fatty acids having 6 to 12 carbons and glycerides or other esters thereof**.



*See* Exh G.

99.     Defendant has directly infringed claim 1 of the '362 Patent in the United States by making, using, offering for sale, selling, and/or importing the Accused Product in violation of 35 U.S.C. § 271(a).  As such, Defendant is liable for direct infringement of the '362 Patent.

100.    Additionally, Defendant has and continues to indirectly infringe the '362 Patent in this District and elsewhere in the United States in violation of 35 U.S.C. § 271(b) by actively inducing others—including its own customers—to directly infringe claim 1 of the '362 Patent.

101.    Defendant's infringement of the '362 Patent is willful, and this case is exceptional.

102.    Plaintiff has suffered harm as a result of Defendant's infringement of the '362 Patent, including in the form of lost profits and diverted sales and market share.  Plaintiff is

therefore entitled to recover damages sustained as a result of Defendant's wrongful acts in an amount that is to be proven at trial.

103.    Plaintiff is entitled to recover from Defendant all damages that Plaintiff has sustained as a result of Defendant's infringement of the '362 Patent, including, without limitation, lost profits but in no event less than a reasonable royalty.

104.    Defendant's infringement of the '362 Patent was and continues to be willful and deliberate, entitling Plaintiff to enhanced damages.

## COUNT VI – INFRINGEMENT OF U.S. PATENT NO. 11,241,403

105.    Plaintiff incorporates all of the allegations of the preceding paragraphs as if fully set forth herein.

106.    On February 8, 2022, the '403 Patent, titled "Beta-hydroxybutyrate mixed salt compositions and methods of use" was duly and legally issued.  A true and correct copy of the '403 Patent is attached as Exhibit F.

107.    Plaintiff owns all rights in the '403 Patent.

108.    Plaintiff provided actual notice to Defendant of their infringement of the '403 Patent prior to the filing of this lawsuit.

109.    As a non-limiting example, set forth below is an exemplary infringement claim analysis for claim 1 of the '403 Patent in connection with the Accused Product.

110.    Representative claim 1 of the '403 Patent is reproduced below:

1.    A composition for increasing ketone level in a subject, comprising:

a plurality of beta-hydroxybutyrate salts comprised of:

at least one beta-hydroxybutyrate salt selected from:

calcium beta-hydroxybutyrate; and

magnesium beta-hydroxybutyrate; and

at least one other beta-hydroxybutyrate salt selected from:

sodium beta-hydroxybutyrate;

potassium beta-hydroxybutyrate;

calcium beta-hydroxybutyrate;

magnesium beta-hydroxybutyrate; and

amino acid salts of beta-hydroxybutyrate,

wherein the beta-hydroxybutyrate salts comprise at least 20% by total weight of calcium beta-hydroxybutyrate and/or magnesium beta-hydroxybutyrate,

wherein the composition is in solid and/or powder form,

wherein the composition is free of medium chain fatty acids having 6 to 12 carbons and glycerides or other esters thereof.

111.    As advertised in Defendant's product labels and listings, the Accused Product infringes at least representative claim 1 of the '403 Patent in the manner described below.

112.    To the extent the preamble of claim 1 is limiting, Accused Product meets the preamble of claim 1 as set forth below:

**1.    A composition for increasing ketone level in a subject, comprising:**

**a plurality of beta-hydroxybutyrate salts comprised of**:

at least one beta-hydroxybutyrate salt selected from:

calcium beta-hydroxybutyrate; and

magnesium beta-hydroxybutyrate; and

at least one other beta-hydroxybutyrate salt selected from:

sodium beta-hydroxybutyrate;

potassium beta-hydroxybutyrate;

calcium beta-hydroxybutyrate;

magnesium beta-hydroxybutyrate; and

amino acid salts of beta-hydroxybutyrate,

wherein the beta-hydroxybutyrate salts comprise at least 20% by total

weight of calcium beta-hydroxybutyrate and/or magnesium betahydroxybutyrate,

wherein the composition is in solid and/or powder form,

wherein the composition is free of medium chain fatty acids having 6 to 12 carbons and glycerides or other esters thereof.



*See* Exh. G.

113.    The Accused Product further meets the limitations of claim 1 as set forth below:

1.    A composition for increasing ketone level in a subject, comprising:

a plurality of beta-hydroxybutyrate salts comprised of:

**at least one beta-hydroxybutyrate salt** selected from:

calcium beta-hydroxybutyrate; and

**magnesium beta-hydroxybutyrate**; and

**at least one other beta-hydroxybutyrate salt** selected from:

**sodium beta-hydroxybutyrate;**

potassium beta-hydroxybutyrate;

calcium beta-hydroxybutyrate;

magnesium beta-hydroxybutyrate; and

amino acid salts of beta-hydroxybutyrate,

wherein the beta-hydroxybutyrate salts comprise at least 20% by total weight of calcium beta-hydroxybutyrate and/or magnesium betahydroxybutyrate,

wherein the composition is in solid and/or powder form,

wherein the composition is free of medium chain fatty acids having 6 to 12 carbons and glycerides or other esters thereof.



*See* Exh G.



*See* Exh I.

114. The Accused Product further meets the limitations of claim 1 as set forth below:

1. A composition for increasing ketone level in a subject, comprising:

a plurality of beta-hydroxybutyrate salts comprised of:

at least one beta-hydroxybutyrate salt selected from:

   calcium beta-hydroxybutyrate; and

   magnesium beta-hydroxybutyrate; and

at least one other beta-hydroxybutyrate salt selected from:

   sodium beta-hydroxybutyrate;

   potassium beta-hydroxybutyrate;

   calcium beta-hydroxybutyrate;

   magnesium beta-hydroxybutyrate; and

   amino acid salts of beta-hydroxybutyrate,

**wherein the beta-hydroxybutyrate salts comprise at least 20% by total weight of calcium beta-hydroxybutyrate and/or magnesium betahydroxybutyrate,**

wherein the composition is in solid and/or powder form,
wherein the composition is free of medium chain fatty acids having 6 to 12 carbons and glycerides or other esters thereof.



*See* Exh G.



*See* Exh I.

115.   The Accused Product further meets the limitations of claim 1 as set forth below:

1.   A composition for increasing ketone level in a subject, comprising:

a plurality of beta-hydroxybutyrate salts comprised of:

at least one beta-hydroxybutyrate salt selected from:

    calcium beta-hydroxybutyrate; and

    magnesium beta-hydroxybutyrate; and

at least one other beta-hydroxybutyrate salt selected from:

      sodium beta-hydroxybutyrate;

      potassium beta-hydroxybutyrate;

      calcium beta-hydroxybutyrate;

      magnesium beta-hydroxybutyrate; and

      amino acid salts of beta-hydroxybutyrate,

wherein the beta-hydroxybutyrate salts comprise at least 20% by total weight of calcium beta-hydroxybutyrate and/or magnesium betahydroxybutyrate,

**wherein the composition is in solid and/or powder form**,

wherein the composition is free of medium chain fatty acids having 6 to 12 carbons and glycerides or other esters thereof.



*See* Exh G.

116.    Accused Product further meets the limitations of claim 1 as set forth below:

1.    A composition for increasing ketone level in a subject, comprising:

a plurality of beta-hydroxybutyrate salts comprised of:

at least one beta-hydroxybutyrate salt selected from:

calcium beta-hydroxybutyrate; and

magnesium beta-hydroxybutyrate; and

at least one other beta-hydroxybutyrate salt selected from:

sodium beta-hydroxybutyrate;

potassium beta-hydroxybutyrate;

calcium beta-hydroxybutyrate;

magnesium beta-hydroxybutyrate; and

amino acid salts of beta-hydroxybutyrate,

wherein the beta-hydroxybutyrate salts comprise at least 20% by total weight of calcium beta-hydroxybutyrate and/or magnesium betahydroxybutyrate,

wherein the composition is in solid and/or powder form,

**wherein the composition is free of medium chain fatty acids having 6 to 12 carbons and glycerides or other esters thereof**.



*See* Exh G.

117.    Defendant has directly infringed claim 1 of the '403 Patent in the United States by making, using, offering for sale, selling, and/or importing the Accused Product in violation of 35 U.S.C. § 271(a).  As such, Defendant is liable for direct infringement of the '403 Patent.

118.    Additionally, Defendant has and continues to indirectly infringe the '403 Patent in this District and elsewhere in the United States in violation of 35 U.S.C. § 271(b) by actively inducing others—including its own customers—to directly infringe claim 1 of the '403 Patent.

119.    Defendant's infringement of the '403 Patent is willful, and this case is exceptional.

120.    Plaintiff has suffered harm as a result of Defendant's infringement of the '403 Patent, including in the form of lost profits and diverted sales and market share.  Plaintiff is therefore entitled to recover damages sustained as a result of Defendant's wrongful acts in an amount that is to be proven at trial.

121.    Plaintiff is entitled to recover from Defendant all damages that Plaintiff has sustained as a result of Defendant's infringement of the '403 Patent, including, without limitation, lost profits but in no event less than a reasonable royalty.

122.    Defendant's infringement of the '403 Patent was and continues to be willful and deliberate, entitling Plaintiff to enhanced damages.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully prays that the Court enter judgment in its favor and award the following relief against the Defendant:

A.    A judgment that Defendant has infringed the '952 Patent literally and/or under the doctrine of equivalents;

B.    A judgment that Defendant has infringed the '876 Patent literally and/or under the doctrine of equivalents;

C.      A judgment that Defendant has infringed the '131 Patent literally and/or under the doctrine of equivalents;

D.      A judgment that Defendant has infringed the '861 Patent literally and/or under the doctrine of equivalents;

E.      A judgment that Defendant has infringed the '362 Patent literally and/or under the doctrine of equivalents;

F.      A judgment that Defendant has infringed the '403 Patent literally and/or under the doctrine of equivalents;

G.      An award of damages pursuant to 35 U.S.C. § 284 in an amount to be proven at trial, including increased damages up to three times the amount found or assessed;

H.      A judgment that this case is exceptional pursuant to 35 U.S.C. § 285;

I.      An award of costs and Plaintiff's reasonable attorneys' fees in this litigation;

J.      An award of pre-judgment and post-judgment interest on Plaintiff's damages;

K.      Entry of an injunction against further infringement of the Asserted Patents;

L.      Any such other and further relief as the Court deems proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial on all matters triable to a jury.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Brian N. Platt
Collin D. Hansen
Workman Nydegger
60 East South Temple Suite 1000
Salt Lake City, UT 84111
Tel: (801) 533-9800

Dated: June 6, 2025
12281996 / 22680.00006

By:  */s/ David E. Moore*
     David E. Moore (#3983)
     Bindu A. Palapura (#5370)
     Andrew M. Moshos (#6685)
     Hercules Plaza, 6th Floor
     1313 N. Market Street
     Wilmington, DE 19801
     Tel: (302) 984-6000
     dmoore@potteranderson.com
     bpalapura@potteranderson.com
     amoshos@potteranderson.com

*Attorneys for Plaintiff Axcess Global
Sciences LLC*